IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Willie Dewayne Stevens,<br><br>            Petitioner,<br><br>vs.<br><br>Laura Escapule, Arizona Attorney General,<br><br>           Respondents. | No. CV-14-1757-PHX-GMS (JZB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT JUDGE:

      Petitioner Willie Dewayne Stevens has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

**I.    SUMMARY OF CONCLUSION**

      In 2009, Petitioner rejected a plea offer stipulating to 12 years' imprisonment. Prior to trial in 2010, Petitioner accepted a subsequent offer that resulted in 17 years' imprisonment. Petitioner asserts that trial counsel was ineffective for advising him to reject the initial offer. After an evidentiary hearing, the trial court determined that counsel had advised Petitioner to take the 12-year offer. The Arizona Court of Appeals affirmed. Because the state courts' determination was not clearly contrary to nor an unreasonable application of federal law, the undersigned will recommend that the Petition be denied and dismissed with prejudice.

## II.     BACKGROUND

### A.     FACTS OF THE CASE

The following factual background is taken from the presentence report. (Doc. 10, Ex. F.)

On June 14, 2009, at approximately 9:30 P.M., Petitioner lost control of his 2007 Pontiac Grand Prix, causing a single-vehicle collision. Petitioner had three passengers in the car with him; his girlfriend in the front passenger's seat, and her friends Ms. Puccetti and Ms. Hernandez, both riding in the back seat of the car. Before the collision Petitioner stated that he wanted to see how fast the car would go, and Ms. Puccetti saw the speedometer indicate a speed of 125 miles per hour shortly before the collision.[1] The collision occurred in a construction zone with a posted speed limit of 25 miles per hour. After Petitioner lost control of the vehicle, it went through the construction barricades and exited the roadway. After leaving the roadway and traveling a distance of 489 feet, the vehicle landed upside down in an irrigation canal. The interior of the vehicle began to fill with water and Petitioner, his girlfriend, and Ms. Puccetti were able to exit the vehicle. Ms. Hernandez, who was restrained by a seatbelt, was not able to get out of the vehicle. Ms. Hernandez was eventually removed from the vehicle by emergency personnel and was transported to the hospital, where she was pronounced dead at 12:07 A.M. on June 15, 2009. Petitioner and the other two women were transported to the hospital where they were treated for non-life-threatening injuries and one passenger was admitted with a fractured sternum.

Ms. Puccetti told law enforcement officers that she saw Petitioner consume eight beers prior to driving that evening. When questioned by the officers, Petitioner admitted that he was the driver of the car at the time of the accident. The officers noticed an odor of alcohol coming from Petitioner at the scene of the accident and conducted a breath

---

[1] At the time that he entered his guilty plea, as a factual foundation for the plea, Petitioner's counsel represented to the court that Petitioner was traveling at approximately 120 miles per hour at the time of the accident and that his BAC was slightly below .08 two hours after the accident. (Doc. 10, Ex. D at 11.)

Intoxilyzer test later at the hospital, which showed a breath alcohol concentration of .068 percent. A subsequent blood test revealed a blood alcohol concentration of .129 percent and the presence of Vicodin. On June 15, 2009, Petitioner was booked on criminal charges arising from the accident. He told officers he had been traveling at 60 miles per hour at the time of the collision and that the fog lights from oncoming traffic had blinded him. (*Id.*, Ex. F.)

A Maricopa County grand jury indictment returned on June 22, 2009, charged Petitioner with: second-degree murder, a class 1 dangerous felony (Count 1); aggravated assault, a class 3 dangerous felony (Count 2); and endangerment, a class 6 dangerous felony. (*Id.*, Ex. A.)

### B.   TRIAL COURT PROCEEDINGS

#### 1.   Plea Proceedings and Sentencing

Petitioner was represented by retained counsel in his criminal proceedings. (Doc. 10, Ex. A, Ex. B, Ex. R.) On or about August 13, 2009, the State made an initial plea offer to Petitioner, which provided for a 12-year term of imprisonment in exchange for Petitioner's guilty plea to one charge of second-degree murder. (Doc. 10, Ex. R at 12-14.) Mr. Hock, Petitioner's defense counsel at that time, mailed a copy of this plea offer to Petitioner and verbally presented the offer to him on August 27, 2009. (*Id.*, Ex. R at 13-15, 21-22, 50-51.)

On September 18, 2009, during a pretrial settlement conference, the trial court explained to Petitioner that he faced a possible aggregate sentence of 50 years imprisonment if he was convicted on all counts at trial. *(Id.*, Ex. R at 31-32, 51-52, 55-56.) At the settlement conference, Petitioner was represented by Mr. Saldivar, an associate of Mr. Hock, who had assumed representation of Petitioner. (*Id.*, Ex. B.) The trial court also explained to Petitioner the State's initial plea offer. (*Id.*, Ex. R at 32.) Despite being informed that he faced a possible 50-year sentence if he chose to go to trial and was convicted on all counts, Petitioner rejected the initial plea agreement. (*Id.*, Ex. R at 20-21, 32, 41, 56.) Petitioner rejected the agreement because he maintained that the

crash was "an accident" and that "12 years was too much time for what happened." (*Id.*, Ex. R at 41.)

After Petitioner rejected the initial plea offer, Mr. Saldivar further investigated the crash in order to obtain a more favorable plea offer. (*Id.*, Ex. R at 29-30, 38-39, 42.) The investigation, however, confirmed the State's evidence against Petitioner, and Mr. Saldivar determined that no viable defense existed. (*Id.*, Ex. R at 30, 35.)

The State's prior plea offer had been revoked and the State refused to extend the prior plea offer stipulating a 12-year term of imprisonment. (*Id.*, Ex. P at 2, Ex. R at 42.) When the State extended a second, different, plea offer to Petitioner a few days before his trial was scheduled to begin, Petitioner chose to accept the second offer rather than proceed to trial. (*Id.*, Ex. R at 33-34, 54-55.) The second written plea agreement provided that Petitioner would plead guilty to one count of second-degree murder and serve a term of imprisonment ranging from 13 to 17 years. (*Id.*, Ex. R at 33, 42, 54, Ex. C.) In the plea agreement, in exchange for Petitioner's guilty plea, the State agreed to dismiss Counts 2 and 3 of the indictment. (*Id.*, Ex. C.)

A change-of-plea hearing was conducted on March 15, 2010. (Doc. 10, Ex. D.) Petitioner was represented by counsel at the hearing and averred to the trial court that he had read the plea agreement, discussed it with his counsel, and signed the plea agreement. (*Id.*) During the hearing, the trial court thoroughly explained the terms of the plea agreement to Petitioner, including the sentencing provisions (*id.* at 5-6), and discussed the rights Petitioner was waiving by entering into the agreement (*id.* at 8-10.). The trial court determined that Petitioner knowingly, voluntarily, and intelligently entered into the plea agreement. (*Id.*, Ex. D at 3-13, Ex. E.) Petitioner acknowledged that he understood the trial court's statements regarding the plea agreement and the rights he was waiving by pleading guilty, and then Petitioner entered a plea of guilty to second-degree murder. (*Id.*, Ex. D at 10-12, Ex. E.)

At sentencing on June 14, 2010, the trial court found that Petitioner's actions were extremely reckless and displayed a tremendous disregard for human life, and sentenced

Petitioner to a slightly-aggravated term of 17 years imprisonment.  (*Id.*, Ex. G at 15-18, Ex. H.)

### 2. Post-Conviction Relief Proceedings

The plea agreement signed by Petitioner waived his right to take a direct appeal of his conviction and sentence.

On July 15, 2010, Petitioner initiated a state action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, by timely filing a notice of his "Rule 32 of-right proceedings" with the state trial court.  (Doc. 10, Ex. I.) The state court appointed counsel to represent Petitioner in his Rule 32 proceedings.  Counsel averred to the trial court that she was unable to find any colorable claims for relief. (*Id.*, Ex. J, Ex. K.)  Petitioner asked the trial court to appoint "new counsel."  The court denied Petitioner's request.  (*Id.*, Ex. M, Ex. N.)

Petitioner subsequently filed a *pro se* Rule 32 petition, arguing that he had been denied his right to the effective assistance of counsel during his pretrial and plea proceedings. (*Id.*, Ex. O, Ex. P.)  Petitioner asserted counsel was ineffective because he did not challenge the search warrant that permitted a blood sample to be tested for alcohol and drugs. (*Id.*, Ex. U at 2.)  Additionally, Petitioner claimed that he had rejected the State's initial plea offer because his trial counsel told him that "they would win the case" if Petitioner refused the offer and chose to proceed to trial.  (*Id.*, Ex. Q at 2.) Petitioner also asserted that his sentence was improperly aggravated because the trial court considered in aggravation a factor that was an element of the offense.  (*Id.*, Ex. U at 2.)

An evidentiary hearing was conducted on December 9, 2011, with regard only to Petitioner's allegations of ineffective assistance of counsel based on the allegation that Petitioner was poorly advised regarding the initial plea offer.  (*Id.*, Ex. U at 2.)  At the hearing, the trial court heard testimony from Petitioner and the defense attorneys who had represented him during his criminal proceedings. (*Id.*, Ex. R.)  Petitioner's first attorney, Mr. Hock, testified that he had discussed the circumstances surrounding the offenses with

Petitioner, and that he had explained the possible sentences that could be imposed if Petitioner were found guilty on all counts after a trial. (*Id.*, Ex. R at 9-11.) Mr. Hock testified that he had informed Petitioner that he would likely receive an aggravated term of 22 years imprisonment if he was convicted at trial, because of the "egregious" facts surrounding the accident. (*Id.*, Ex. R at 10-12.) Mr. Hock testified that he told Petitioner he did not think it likely that, if found guilty at trial, all of the sentences would be imposed consecutively, but that he believed an enhanced sentence would be imposed if convicted of second-degree murder. (*Id.*, Ex. R at 10-12.) Mr. Hock testified that, although he saw Petitioner at a hearing on August 27, he did not at that time or ever advise Petitioner regarding the initial plea offer, although he had personally believed that the initial, 12-year plea offer, extended on or about August 13, 2009, was an extremely favorable offer. (*Id.*, Ex. R at 13-15.)

Mr. Saldivar, Petitioner's second counsel, testified that responsibility for Petitioner's case as defense counsel was reassigned within the firm on or about August 31, 2009. (*Id.*, Ex. R at 15-16.) Mr. Saldivar was assigned to represent Petitioner, and he met with Petitioner approximately five times at the jail. (*Id.*, Ex. R at 31.) Mr. Saldivar testified at the evidentiary hearing that, during those meetings, he told Petitioner that the 12-year plea offer was "a good deal" and that he "should take it." (*Id.*, Ex. R at 31-32.) Mr. Saldivar testified that Petitioner had ignored his advice and rejected the offer because Petitioner felt that serving a term of 12 years' imprisonment was too much time for what had occurred. (*Id.*, Ex. R at 31, 34, 41.)   Mr. Saldivar also testified that Petitioner told Mr. Saldivar that Mr. Hock had told Petitioner he should not take the initial plea offer because he "could get him probation." (*Id.*, Ex. R at 42-43.) When Mr. Saldivar relayed this comment to Mr. Hock, Mr. Hock replied that he had never made that statement to Petitioner. (*Id.*, Ex. R at 30-31).

Mr. Saldivar testified at the hearing that he had investigated the crash further to attempt to obtain a better plea deal from the State. (*Id.*, Ex. R at 29-30, 40, 42.) Mr. Saldivar testified that this further investigation only confirmed the State's evidence

against Petitioner, and that the State refused to re-extend the 12-year offer. (*Id.*, Ex. R at 30-34.) A few days before trial the State presented the second plea offer and Mr. Saldivar discussed that offer with Petitioner. (*Id.*, Ex. R at 34-35.)  Mr. Saldivar explained to Petitioner that there was no viable defense to the charges against him and, as a result, Petitioner chose to accept the second plea offer rather than go to trial. (*Id.*, Ex. R at 35, 54-55.)

In contrast to Mr. Hock's and Mr. Saldivar's testimony at the evidentiary hearing, Petitioner claimed that his former attorneys were lying about the events surrounding his criminal proceedings. (*Id.*, Ex. R at 56.) Petitioner testified that he had wanted to accept the initial plea offer, but that his counsel convinced him to reject the offer by saying that Petitioner "had a 50/50 chance at trial" and that Petitioner would get the same sentence as offered in the plea agreement even if Petitioner were found guilty. (*Id.*, Ex. R at 50-52.) At the evidentiary hearing, however, Petitioner acknowledged that, at the settlement conference, the trial court had explained the initial plea offer to Petitioner and outlined the possible sentences that he could receive if he was convicted. (*Id.*, Ex. R at 49-51, 55-54.)

After considering all the evidence presented at the hearing on Petitioner's Rule 32 claim of ineffective assistance of trial counsel, the trial court determined that Petitioner's testimony at the evidentiary hearing was not credible. (*Id.*, Ex. S at 3.)  The trial court stated:

> On December 9, 2011, the Court held an evidentiary hearing on the defendant's second claim of ineffective assistance. Based upon the testimony presented at that hearing, the Court finds that the defendant's factual claims that he was advised not to take the 12 year plea offer in the matter, that the settlement conference was merely a formality and that his attorney was confident they would win the case, are not supported by the record. In fact, the Court finds that the credible evidence presented at the hearing demonstrates that the defendant was advised by his lawyer at the time of the settlement conference that the 12 year plea was a good plea and that he should take it. The defendant has failed to prove by a preponderance of the evidence that his attorney's advice fell below prevailing standards or

7

that he was prejudiced by his counsel's advice in any way.

(*Id.*) The Superior Court denied relief and dismissed Petitioner's Rule 32 action.

Petitioner filed a timely petition for review of the trial court's decision with the Arizona Court of Appeals. (*Id.*, Ex. T.) The appellate court reviewed the trial court's decision and affirmed in a six-page memorandum decision, finding that there was no basis to reject the Superior Court's determination that Petitioner's factual claims regarding the circumstances surrounding his rejection of the initial guilty plea were not credible. (*Id.*, Ex. U at 8.)

### C. FEDERAL PETITION FOR WRIT OF HABEAS CORPUS

Petitioner filed his federal habeas Petition on August 6, 2014. Petitioner asserts that he was denied the right to the effective assistance of trial counsel. (Doc. 1.) Petitioner contends Mr. Hock's performance was deficient because Mr. Hock "did not give him any comprehensive discussion" regarding the merits of the first plea offer. (*Id.* at 12.) Petitioner alleges that Mr. Hock told Petitioner to "reject the first plea offer" because the "state's case was weak." (*Id.* at 16.) Petitioner claims his second counsel, Mr. Saldivar, also advised him not to take the 12-year offer. (*Id.*) Petitioner claims that Mr. Saldivar advised him to take the second plea offer after Mr. Saldivar realized that the fee for the case would not be paid to Mr. Saldivar. (*Id.* at 17.)

On December 4, 2014, the State filed a Response to the Petition. (Doc. 10.) On December 18, 2014, Petitioner filed a Reply. (Doc. 12.)

### III. APPLICATION OF LAW

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2244.

### A.     REVIEW OF CLAIMS UNDER THE AEDPA

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision which was contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law.  *See* 28 U.S.C. § 2254(d); *Davis v. Ayala*, 135 S.Ct. 2187, 2198-99 (2015); *Musladin v. Lamarque*, 555 F.3d 834, 838 (9th Cir. 2009).  The AEDPA requires that the habeas court review the "last reasoned decision" from the state court, "which means that when the final state court decision contains no reasoning, we may look to the last decision from the state court that provides a reasoned explanation of the issue." *Murray v. Schriro*, 746 F.3d at 441 (quoting *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000)).

> Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions.  And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.  Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

*White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (internal citations and quotations omitted).  *See also Arrendondo*, 763 F.3d at 1133-34.

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fair minded disagreement." *Harrington v. Richter*, [] 131 S.Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." [] 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at ——, 131 S.Ct., at 786 (internal quotation marks omitted).

*Burt v. Titlow*, 134 S.Ct. 10, 15-16 (2013).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law as stated in United States Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Brown v. Payton*, 544 U.S. 133, 141 (2005).

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. *See McNeal v. Adams*, 623 F.3d 1283, 1287–88 (9th Cir. 2010). The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. *See, e.g.*, *Renico v. Lett*, 559 U.S. 766, 130 (2010). An unreasonable application of law is different from an incorrect one. *See Renico*, 130 S. Ct. at 1862; *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir. 2005). "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case." *Adamson v. Cathel*, 633 F.3d 248, 255–56 (3d Cir. 2011). *See also Howard v. Clark*, 608 F.3d 563, 567–68 (9th Cir. 2010).

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Brumfield v. Cain*, 135 S.Ct. 2269, 2277 (2015). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." *Sumner v. Mata*, 455 U.S. 591, 593 (1982). *See also Phillips v. Ornoski*, 673 F.3d 1168, 1202 n.13 (9th Cir. 2012).

Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). *See also Murray v. Schriro*, 745 F.3d 984, 998 (9th Cir. 2014). Pursuant to section 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Clark v. Arnold*, 769 F.3d 711, 724-25 (9th Cir. 2014) (internal quotation marks and citation omitted) (quoting *Burt*, 134 S.Ct. at 15).

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. *See Lafler*, 132 S. Ct. 1389-90; *Panetti v. Quarterman*, 551 U.S. 930, 953–54 (2007). Additionally, the petitioner must show the error was not harmless: "For reasons of finality, comity, and federalism, habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Davis v. Ayala*, 135 S.Ct. 2187, 2197 (2015) (internal quotations omitted).

**B.  *STRICKLAND* AND INEFFECIVE ASSISTANCE OF COUNSEL CLAIMS**

The Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test applies to a federal habeas petitioner's challenge to a conviction entered upon a guilty plea. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Washington v. Lampert*, 422 F.3d 864, 872 (9th Cir. 2005). In such a context, "the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the [petitioner's] ability to enter an intelligent, knowing and voluntary plea of guilty." *Lambert*, 393 F.3d at 980. To

prevail on this claim, Petitioner must show that his counsel's representation fell below the range of competence demanded of counsel in criminal cases and that he suffered actual prejudice as a result of counsel's incompetence. *Id.* at 873. Because a petitioner's failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Strickland*, 466 U.S. at 697–700.

> In *Hill*, the Supreme Court adapted the two-part *Strickland* standard to challenges to guilty pleas based on ineffective assistance of counsel, holding that a defendant seeking to challenge the validity of his guilty plea on the ground of ineffective assistance of counsel must show that (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 57-59, 106 S. Ct. 366.

*Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007).

### C. PETITIONER WAS NOT DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

Petitioner contends that Mr. Hock, his criminal defense counsel, instructed him "to reject the first plea offer of 12 years." (Doc. 1 at 16-17.) Petitioner argues that this advice constituted unconstitutionally deficient performance on the part of counsel, which prejudiced Petitioner by causing him to reject the State's first plea offer and accept a second offer that resulted in a longer sentence. (*Id.* at 17-18.)

The state trial court conducted an evidentiary hearing regarding the claim presented in the federal habeas Petition. The state court heard from Petitioner, Mr. Hock, and Mr. Saldivar, Petitioner's subsequent counsel. The trial court concluded that, as a matter of fact, Mr. Hock and Mr. Saldivar's testimony was credible and that Petitioner was not telling the truth regarding the events surrounding his rejection of the initial plea agreement. The Arizona Court of Appeals affirmed the Superior Court's ruling, finding:

> Based on the record before us, Stevens has not persuaded us the trial court abused its discretion in rejecting his claim that counsel had rendered ineffective assistance in connections with plea negotiations. The court found Stevens's "factual claims that he was advised not to take the 12 year plea offer in the matter, that the settlement conference was merely a formality and that his attorney was confident they would win the case, are not supported by the record." The court added, "[i]n fact, ... the credible evidence presented at the hearing demonstrates that Stevens was advised by his lawyer at the time of the settlement conference that the 12 year plea was a good plea and that he should take it." Thus, the court concluded, because it did not find Stevens credible, he "failed to prove by a preponderance of the evidence that his attorney's advice fell below prevailing standards or that he was prejudiced by his counsel's advice in any way."
>
> We defer to the trial court here because in ruling on this claim of ineffective assistance, the court necessarily was required to resolve conflicts in the evidence. It clearly rejected Stevens's testimony, which was at the heart of his claim, and accepted as more credible the testimony of his attorneys, which belied that claim. Again, the trial court, not this court, is the sole arbiter of witness credibility in post-conviction proceedings. *Fritz*, 157 Ariz. at 141, 755 P.2d at 446. We have no basis for interfering with the court's ruling.

(Doc. 10, Ex. U at 5-6.)

The state court's conclusion that Petitioner was not denied his right to the effective assistance of counsel was neither contrary to nor an unreasonable application of federal law. The state court determined that Petitioner was not denied his right to the effective assistance of counsel because his counsel's performance was not deficient. More specifically, the state court determined counsel's performance was not deficient because counsel advised Petitioner to take the initial plea offer rather than risk going to trial and receiving a much lengthier sentence if convicted by a jury on all charges. As noted *supra*, the actual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. Additionally, the state court found Petitioner was not prejudiced because the state trial court clearly outlined the consequences Petitioner faced if he rejected the plea offer.

Based on the record before the state court, Petitioner has not established that his

counsel's advice regarding the initial plea agreement was deficient. Neither has Petitioner presented clear and convincing evidence to this Court that overcomes the state court's factual findings regarding his counsel's advice to Petitioner that he should take the initial plea agreement. Because Petitioner has not presented evidence sufficient to overcome the state court's factual findings and, presuming the state court's factual findings are correct, the state court's determination that Petitioner was not denied his right to the effective assistance counsel was not clearly contrary to nor an unreasonable application of federal law, this Court will recommend that the Petition be denied and dismissed with prejudice.

### D.     EVIDENTIARY HEARING

An evidentiary hearing is not warranted regarding Petitioner's claims because the record is sufficiently developed to resolve Petitioner's assertion that he was denied his right to the effective assistance of counsel.

### IV.    CONCLUSION

The state courts' determination that Petitioner was not denied his right to the effective assistance of counsel was not clearly contrary to nor an unreasonable application of federal law. The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011). The Court will therefore recommend that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 31st day of July, 2015.

Honorable John Z. Boyle
United States Magistrate Judge